1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GREENBERG TRAURIG, LLP**
**ATTORNEYS AT LAW**
**SUITE 700**
**2375 EAST CAMELBACK ROAD**
**PHOENIX, ARIZONA 85016**
**(602) 445-8000**

Nicole M. Goodwin, SBN 024593, goodwinn@gtlaw.com
Adrianna Griego Gorton, SBN 031836, gortona@gtlaw.com
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

[Additional joining co-defendants and counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Compu-Tax & Accounting, LLC, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Bank of America, N.A.; Desert Financial Credit Union; JPMorgan Chase Bank, N.A. d/b/a Chase Bank; Notre Dame Federal Credit Union; & U.S. Bank, N.A.<br><br>Defendants. | Case No. 2:20-cv-01554-SMB<br><br>**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**<br><br>(Oral Argument Requested) |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants jointly move to dismiss Plaintiff Compu-Tax & Accounting, LLC's ("Plaintiff") Class Action Complaint for Declaratory Relief and Damages (the "Complaint") with prejudice. As required by this Court's Local Rules of Civil Procedure (LRCiv 12.1(c)), the Parties met and conferred on September 29, 2020, but could not agree that the pleading is curable by a permissible amendment.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This is one of dozens of copycat cases filed nationwide by purported "agents" demanding automatic payment of agent fees from lenders. Plaintiff attempts through its Complaint to rewrite the Paycheck Protection Program ("PPP"), created as part of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 (the "CARES Act" or the "Act"), to require that lenders pay a fee to any self-proclaimed agent that claims to have helped a borrower obtain a PPP loan—regardless of whether that "agent" had any kind of agreement with that lender. Plaintiff's ill-advised attempt runs contrary to the unambiguous language of the CARES Act, the PPP, and the Small Business Administration's ("SBA") Section 7(a) loan program,[1] all of which regulate and place a *limitation* on possible agent fees. The Section 7(a) loan program has *never* required the involuntary payment of agent fees, but instead sets forth agreement and certification requirements as a safeguard against fraud and abuse. The only two courts that have addressed the claims Plaintiff asserts have rejected them, granted the lender defendants' motions to dismiss, and held that the CARES Act and its associated regulations do not entitle an "agent" to a fee from a lender absent an agreement. *See Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc., et al.*, No. 3:20-cv-5425, 2020 WL 4882416 (N.D. Fla. Aug. 17, 2020) ("*Sport & Wheat*"); *Johnson v. JPMorgan Chase Bank, N.A.*, No. 1:20-cv-04100-JSR, 2020 WL 5608683, at *1, 8 (S.D.N.Y. Sept. 21, 2020).

---

[1] As more thoroughly discussed throughout this motion, the CARES Act and PPP loans are administered by the SBA "under the same terms, conditions, and processes, as a loan made under" the SBA's established Section 7(a) loan program. *See* 15 U.S.C. § 636(a)(36)(B).

1    The rulings in both *Sport & Wheat* and *Johnson* are unequivocal. In *Sport &*

2  *Wheat*, the court stated:

3      The central issue of first impression is whether Plaintiff and others like it
       are entitled to any portion of the fees paid by the federal government to
4      lenders like Defendants who are tasked with handing out hundreds of
       billions of dollars of "loans" under the Paycheck Protection Program (PPP).
5      The short answer is 'no'.

6  *Id.* at *1. Similarly, in *Johnson* the court held that "absent an agreement between agent

7  and lender, defendants are not required to pay agent fees under the text of the CARES

8  Act or its implementing regulations." 2020 WL 5608683, at *1, 8.

9    The same result applies here. Like the plaintiffs in *Sport & Wheat* and *Johnson*,

10  Plaintiff is an accounting firm that allegedly assisted small businesses in applying for

11  PPP loans. Longstanding SBA regulations require an agent to "execute and provide to

12  SBA a compensation agreement" signed by the lender, agent, and applicant before it may

13  become entitled to receive a fee "in any matter involving SBA assistance." 13 C.F.R.

14  § 103.5(a). This requirement promotes the twin objectives of allowing lenders to choose

15  with whom they do business and preventing fraud and abuse by unscrupulous or

16  unnecessary agents. Just as in *Sport & Wheat* and *Johnson*, Plaintiff does not allege that

17  it complied with this requirement or made any attempt to do so.

18    Instead, Plaintiff asserts that one line in the SBA's regulation implementing the

19  PPP purportedly dispensed with the longtime requirement that a lender agree to pay an

20  agent before having an obligation to do so, and created in its place a new, mandatory

21  obligation for participating lenders to pay agents notwithstanding the absence of any such

22  requirement in the CARES Act itself. But the SBA's regulation did no such thing, and

23  Plaintiff's theory is refuted by the plain language of the CARES Act and the existing

24  regulatory framework, as the only courts to have considered this issue have held.

25    Plaintiff pointedly ignores the threshold requirement of a compensation agreement

26  signed by Plaintiff, Defendants, and the applicants before it is entitled to collect a fee.

27  *See* 13 C.F.R. § 103.5(a). Instead, Plaintiff asks this Court to sanction its failure to do so

28  by overlooking the regulatory prerequisites that agents must satisfy before they are

entitled to payment of an agent fee. Plaintiff's claims thus should be dismissed as a matter of law.

Additionally, Plaintiff's claims are barred because, as *Johnson* further held, the CARES Act and the Small Business Act do not provide for a private right of action. *See* 2020 WL 5608683 at *8-9. Plaintiff's declaratory judgment claim, state law claims, and claims seeking to enforce the CARES Act and the SBA constitute an impermissible end-run around the lack of a federal private right of action. And, in any event, Plaintiff fails to plead the requisite elements of its claims. All of Plaintiff's claims should be dismissed with prejudice.

## BACKGROUND

### I.    THE SBA'S SECTION 7(A) PROGRAM REQUIRES AGENT COMPENSATION AGREEMENTS.

The SBA was created in 1953 to develop programs and encourage lending to small businesses. Under the SBA's largest loan program, the "Section 7(a)" program, lenders make loans to small businesses, and the SBA guarantees a percentage of those loans if certain conditions are satisfied. *See generally* 15 U.S.C. § 636(a).

Neither small businesses nor lenders are required to use "agents"[2] to help submit Section 7(a) loan applications. *See* 13 C.F.R. § 103.2(a). Indeed, fewer than three percent of Section 7(a) borrowers use agents. *See* 85 Fed. Reg. 7,622, 7,627 (Feb. 10, 2020). But when borrowers do use agents, the Small Business Act and Part 103 of the SBA's regulations set forth a comprehensive scheme with which agents must comply when "[p]reparing or submitting on behalf of an applicant an application for financial assistance of ***any kind***" from the SBA. *Id*. § 103.1(b)(1) (emphasis added); *see also* 15 U.S.C. § 642 (requiring that a borrower disclose to the SBA the identity of, and compensation paid to, any agent).

Under this framework, the "SBA regulate[s] an Agent's fees and provision of

---

[2] An "agent" is any "authorized representative, including an attorney, accountant, consultant, packager, lender service provider, or any other person representing an applicant or participant by conducting business with SBA." 13 C.F.R. § 103.1(a).

1    service." 13 C.F.R. § 103.5. Before an agent can receive a fee, the agent first "must

2    execute and provide to SBA a compensation agreement," which "governs the

3    compensation charged for services rendered or to be rendered to the Applicant or lender

4    in any matter involving SBA assistance." *Id*. § 103.5(a). These requirements have been

5    in place since 1996. *See* Standards for Conducting Business with SBA, 61 Fed. Reg.

6    2,679, 2,682 (Jan. 29, 1996).

7        The "SBA provides the form of compensation agreement … to be used by

8    Agents." 13 C.F.R. § 103.5(a). For Section 7(a) loans, agents must use the SBA's Form

9    159 Fee Disclosure and Compensation Agreement.[3] That agreement "must be completed

10   and signed by the SBA Lender and Applicant whenever an Agent is paid by either the

11   Applicant or the SBA Lender in connection with the SBA loan application." *Id*. at 1. In

12   the agreement, "[t]he Agent must be identified, all services provided must be listed, and

13   *the party paying the fee and amount paid* must also be disclosed (and itemized, when

14   required)." *Id.* (emphasis added). It also requires the agent to make certifications about

15   the services to be performed and compensation to be paid or received in connection with

16   the loan. *Id*. at 1–2. If the agent claims a fee above $2,500, the agent must provide "1) a

17   detailed explanation of the work performed; and 2) the hourly rate and the number of

18   hours spent working on each activity." *Id*. Agents must provide this information "even if

19   the compensation is charged on a percentage basis." *Id*. at 2.

20       These disclosures do more than deter unscrupulous agents from charging

21   excessive fees. As the SBA's inspector general has observed, the SBA adopted 13 C.F.R.

22   § 103.5 and Form 159 "to mitigate the risk associated with loan agent participation, and

23   to protect program participants and taxpayers from fraud and abuse."[4]

24

25   [3] A true and correct copy of Form 159 Fee Disclosure and Compensation Agreement is
     attached hereto as Exhibit A. As discussed in the concurrently-filed Request for Judicial
26   Notice ("RJN"), the Court may properly take judicial notice of this SBA document and
     the other publicly-available materials attached to this Motion.
27

28   [4] *See* SBA Office of the Inspector General, "SBA Needs to Improve Its Oversight of Loan
     Agents," September 25, 2015, p. 5, attached hereto as Exhibit B.

## II.    THE CARES ACT DOES NOT REQUIRE PPP LENDERS TO PAY AGENT FEES

The PPP is one component of the CARES Act and made more than $600 billion in loans available to small businesses. *See* Paycheck Protection Program and Health Care Enhancement Act § 101(a), Pub. L. 116-139 (2020). In general terms, a PPP loan is forgivable if the borrower uses it for payroll costs or other approved purposes, retains employees, and does not cut wages. 15 U.S.C. § 9005(b), (d).

Congress instructed that PPP loans be administered by the SBA "under the same terms, conditions, and processes as a loan made under" the agency's established Section 7(a) loan program, unless Congress "otherwise provided." *Id*. § 636(a)(36)(B). To encourage lenders to offer PPP loans, Congress directed that the SBA "shall reimburse" lenders for the cost of making loans by paying loan-processing fees based on the amounts of the loans. *Id*. § 636(a)(36)(P)(i).

In contrast to Congress's instruction that *lenders* "shall" receive a fee for processing PPP loans, the CARES Act addresses agent fees only once, in a provision titled "Fee Limits." *Id*. § 636(a)(36)(P)(ii). That provision—located immediately after the provision on lenders' fees—states that agents "may not collect a fee in excess of the limits established by the [SBA]." *Id*. The CARES Act did not otherwise alter the existing SBA framework in which an agent was required to operate to be entitled to compensation.

## III.    THE SBA IMPLEMENTS THE PPP AND DOES NOT REQUIRE LENDERS TO PAY AGENTS

Hours before the PPP application window opened, the SBA issued its Interim Final Rule (the "IFR") for the PPP program. 85 Fed. Reg. 20,811 (Apr. 15, 2020). The IFR requires small businesses to complete a form—the PPP Borrower Application Form (Form 2483)—to apply for a PPP loan.[5] *See* 85 Fed. Reg. at 20,812. Form 2483 calls for the applicant to: provide basic identifying information; declare its average monthly payroll and number of employees; answer eight eligibility questions; and make certifications about its eligibility, the application's accuracy, and how loan proceeds will

---

[5] A true and correct copy of Form 2483 is attached hereto as Exhibit C.

be used. (*See* Ex. C.) Form 2483 ***does not*** include any field or question for the applicant to notify the lender or the SBA that the applicant used the services of an agent.

Consistent with Congress' directive to establish limits on agent fees, the IFR limits the "total amount that an agent may collect" for "assistance in preparing an application for a PPP loan" as follows:

**Who pays the fee to an agent who assists a borrower?**

Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:

i. One (1) percent for loans of not more than $350,000;

ii. 0.50 percent for loans of more than $350,000 and less than $2 million; and

iii. 0.25 percent for loans of at least $2 million.

The Act authorizes the Administrator to establish limits on agent fees. The Administrator, in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans.

85 Fed. Reg. at 20,816. Like the CARES Act, the IFR does not require lenders to pay fees to any person who claims to be an agent of a borrower. Nor does the IFR otherwise modify the SBA's preexisting regulations in Part 103 governing agent fees.

## IV. PLAINTIFF DID NOT OBTAIN COMPENSATION AGREEMENTS AND INSTEAD FILED THIS LAWSUIT.

After the SBA published the IFR, the Association of International Certified Public Accountants ("AICPA") cautioned CPAs that "there is a possibility that you will not be paid for your services" assisting with PPP applications.[6] The AICPA advised agents to "discuss this issue with clients and the banks to ensure there is an understanding,

---

[6] *See* Small Business Loans Under the PPP: Issues Related to CPA Involvement (2020) (https://www.aicpa.org/content/dam/aicpa/interestareas/centerforplainenglishaccounting/resources/2020/special-report-sba-ppp-loans.pdf).

1    preferably in writing, as to how and when any fees will be paid." *Id*.

2        Plaintiff does not allege that it followed the AICPA's guidance or the applicable

3    regulations. Instead, Plaintiff asserts that it is entitled to receive agent fees from

4    Defendants for any purported help it says it provided to PPP loan applicants. (Compl. ¶¶

5    32-34, 104.) According to Plaintiff, the IFR *requires* lenders to pay it the maximum

6    permissible agent fee, regardless of whether any lender agreed to do business with

7    Plaintiff or the amount of work Plaintiff performed in connection with any particular

8    application. (*Id.*) Plaintiff fails to identify any agreement between Plaintiff and any of the

9    Defendants that Plaintiff would act as an agent in connection with these loans. Plaintiff

10   does not even allege that it requested payment from all Defendants. (*Id*. ¶¶ 2-6.) Thus,

11   Plaintiff's own allegations make it clear that Plaintiff failed to fulfill the necessary

12   requirements.

13                                **LEGAL STANDARD**

14       To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that

15   is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals

16   of the elements of a cause of action, supported by mere conclusory statements, do not

17   suffice." *Id*. Nor is the Court "required to accept as true allegations that contradict

18   exhibits attached to the Complaint or matters properly subject to judicial notice, or

19   allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

20   inferences." *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

21   This Court may consider the SBA, Treasury and other publicly-available materials

22   attached as exhibits to this Motion because they are all properly subject to judicial

23   notice. *See* RJN at 1-3.

24                                  **ARGUMENT**

25   **I.    ALL OF PLAINTIFF'S CLAIMS FAIL BECAUSE THE CARES ACT AND
         IFR DO NOT CREATE AN ENTITLEMENT TO AGENT FEES.**

26
27       Plaintiff's claims all require a finding that the CARES Act requires lenders to pay

28   a portion of their PPP loan fees to agents, without regard to (1) what services the agents

                                          8

performed, or (2) whether the lenders agreed to pay such fees. Plaintiff's claims should be dismissed because neither the CARES Act nor its implementing regulations imposes any such requirement.

### a. The CARES Act Does Not Mandate Payment of an "Agent Fee."

Although all of Plaintiff's claims rest on the premise that the CARES Act mandates payment of agent fees by lenders to those who claim to be agents (Compl. ¶¶ 25, 33-36, 40, 44, 60-61, 67, 73, 81, 92, and 97), Plaintiff does not cite to a single provision of the CARES Act creating such an unfettered right. That is for good reason: no such right exists.

The CARES Act's only reference to agent fees *limits* those fees. Congress provided: "An agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator." 15 U.S.C. § 636(a)(36)(P)(ii). Plainly, a restriction on what fees an agent "may … collect" imposes no affirmative duty on lenders to pay the maximum permissible fee, nor does it impose an absolute duty on a lender to pay a fee at all. *See Bostock v. Clayton Cnty, Ga.*, 520 U.S. __, 2020 WL 3146686, at *4 (2020) ("[O]nly the words on the page constitute the law adopted by Congress and approved by the President"); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013) ("[I]t would be improper to conclude that what Congress omitted from the statute is nevertheless within its scope."). As the court observed in *Johnson*, the text of the CARES Act "does not create an independent entitlement for agent fees; rather, it simply imposes a limit on the amount of fees an agent is permitted to collect in the event of an agreement for agent fees." 2020 WL 5608683, at *7.

The CARES Act's provision limiting fees for agents contrasts sharply with the immediately preceding subsection addressing lender fees, in which Congress mandated that the SBA "*shall reimburse* a lender authorized to make a covered loan at a rate" based on the size of the loan. 15 U.S.C. § 636(a)(36)(P)(i) (emphasis added). There, Congress clearly identified who was entitled to receive fees (lenders), who was required to pay fees

1   (the SBA), and the amount of that fee (a specified percentage). No similar mandate

2   appears with respect to the CARES Act's sole agent-fee reference. "Where Congress

3   includes particular language in one section of a statute but omits it in another, it is

4   generally presumed that Congress acts intentionally and purposely in the disparate

5   inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993). The

6   stark difference between the CARES Act's neighboring provisions governing lender fees

7   and agent fees confirms that Congress (i) did not guarantee agents a right to receive

8   compensation for work on PPP loans, and (ii) did not provide that lenders have any

9   responsibility to pay agents retained by PPP borrowers. Put simply, "if Congress had

10  intended for agents to automatically receive a portion of the lenders' fees, it would have

11  said so." *Johnson*, 2020 WL 5608683, at *7.

12          **b.  Agent Compensation for PPP Loans Is Subject to Existing Section 7(a)
            Rules and Restrictions.**

13  As Plaintiff acknowledges, Congress directed the SBA to make PPP loans

14  available under the agency's established Section 7(a) program. *See* CARES Act § 1102

15  (amending 15 U.S.C. § 636(a)); 85 Fed. Reg. at 20,811–12 (describing the PPP as a "new

16  7(a) program"); (Compl. ¶¶ 18, 108.) Congress further directed that "[e]xcept as

17  otherwise provided" in Section 636(a)(36), the SBA "may guarantee [PPP loans] under

18  the ***same terms, conditions, and processes*** as a loan made under" the existing Section

19  7(a) program. 15 U.S.C. § 636(a)(36)(B) (emphasis added).[7]

20  These existing Section 7(a) "terms, conditions, and processes" include the

21  requirement that agents must "execute and provide to the SBA a compensation

22  agreement" between the lender, borrower, and agent before agents may receive

23  "compensation charged for services rendered … to the Applicant or lender in any matter

24  involving SBA assistance." 13 C.F.R. § 103.5(b); *see also* 15 U.S.C. § 642 (requiring

25

26  ───────────────────

27  [7] Under the SBA's agreements with PPP lenders, the SBA will guarantee loans if PPP
    lenders make loans in accordance with the "PPP Loan Program Requirements." *See* SBA
    CARES Act Section 1102 Lender Agreement, attached hereto as Exhibit D, §§ 2–5. This

28  includes requirements imposed on lenders by statute and SBA regulation, as well as
    "forms applicable to the 7(a) Loan Program." *Id.*, § 2 (*citing* 13 C.F.R. § 120.10).

borrowers to identify agents before a loan is made). This approach makes agent compensation an issue to be settled by contract among the lender, applicant, and agent— not a statutory or regulatory entitlement. It also provides important safeguards against unreasonable or excessive compensation, fraudulent agent-fee requests, and claims by debarred or otherwise ineligible agents.

Plaintiff attempts to avoid this requirement by claiming that "[n]owhere in the CARES Act or the SBA Regulations does the Federal Government state, or even suggest, that Lender's approval is required in order for an Applicant to use an Agent." (Compl. ¶ 32.) That argument, however, misses the point. An applicant's choice to use an agent has nothing to do with an agent's alleged entitlement to a fee, nor can that choice abrogate the agent's existing, independent obligation to meet the threshold requirements set out in Section 7(a).

When Congress legislates, it is presumed to do so against the backdrop of existing regulations. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts."). That means the existing Section 7(a) regulatory scheme, which applies to "any matter involving SBA assistance," 13 C.F.R. § 103.5(a), presumptively covers PPP loans. *See, e.g., Flores v. Sessions*, 862 F.3d 863, 875 (9th Cir. 2017) (There is an "assumption that Congress is aware of the legal context in which it is legislating.").

Nothing in the CARES Act or the IFR supports a departure from the Section 7(a) structure for agent fees on PPP loans. Where the CARES Act modified aspects of the existing Section 7(a) regime to enable lenders to rapidly make forgivable loans to businesses in need, it did so expressly and unambiguously. *See, e.g.*, 15 U.S.C. § 636(a)(2)(F) (requiring the SBA to guarantee PPP loans in full); *id.* § 636(a)(36)(D)(i) (expanding PPP eligibility to nonprofits); *id.* § 636(a)(36)(F)(ii)(I) (giving existing Section 7(a) lenders delegated authority to make and approve PPP loans); *id.* § 636(a)(36)(J) (disposing with collateral requirements normally applicable to Section 7(a) loans). Conversely, nothing in the text, structure, or purpose of the CARES Act

1   suggests that Congress intended to exempt PPP loans from SBA's longstanding rules

2   regulating agent compensation—including that an agent must enter into a "compensation

3   agreement" with the lender before any agent fees may be paid. 13 C.F.R. § 103.5(a).

4       Both courts to rule on this issue have reached the same conclusion. The Court in

5   *Sport & Wheat* held: "The Court sees no conflict in these [compensation agreement]

6   requirements and the [IFR]." 2020 WL 4882416 at *4. Likewise, the *Johnson* court

7   concluded that the IFR "impose[s] limits on agent fees, specifying how much and from

8   whom the agents could collect fees," and "do[es] not entitle agents to fees but simply

9   regulate[s] how such fees would be paid when they are to be paid." 2020 WL 5608683,

10  at *7. "Nothing in these regulations, then, is inconsistent with the Section 7(a)

11  requirement that an agent must first execute an agreement before receiving any agent

12  fees." *Id.*[8]

13      It is sensible that Congress would have left undisturbed the SBA's 24-year-old

14  rule requiring lenders, agents, and applicants to negotiate acceptable fees among

15  themselves. "A person is not required to deal with another unless he so desires."

16  Restatement (First) of the Law of Restitution § 2 cmt. a. And "one has no duty to pay for

17  services officiously rendered without request although resulting in benefit to him."

18  Restatement (Second) of the Law of Agency § 441 cmt c. That, presumably, is why the

19  AICPA recommended agents "discuss" compensation "with clients and the banks to

20  ensure there is an understanding, preferably in writing, as to how and when any fees will

21  be paid."

22      Congress's mandate that the SBA "***shall reimburse*** a lender … at a rate" set forth

23  in the CARES Act reinforces this result. 15 U.S.C. § 636(a)(36)(P)(i) (emphasis added).

24  By setting a specific rate that lenders "shall" receive, Congress sought to encourage

25  

26  [8] Even if Plaintiff claims that it is not required to use the SBA's Form 159 (which would
    be mistaken), Plaintiff's claims would still fail because, as stated in *Johnson*, "even if
27  plaintiffs were correct that this particular form is inapplicable to the PPP, that would not
    itself dispose of the requirement that agents and lenders enter into an agreement in order
28  for agents to receive fees." 2020 WL 5608683, at *7 n. 16.

lenders to make PPP loans and to compensate lenders for the costs they incurred in doing so on an expedited basis. At the same time, by directing that PPP loans generally be made under the "same terms, conditions, and processes" as other Section 7(a) loans, *id.* § 636(a)(36)(B), Congress left intact preexisting rules designed to give lenders the freedom to decide whether to work with agents and how much to pay them. A rule permitting self-described agents to demand a portion of the fees that lenders "shall" receive would undermine this careful balance struck by Congress.

Plaintiff's approach of eliminating this requirement of advance agreement among lenders, agents, and applicants, by contrast, raises numerous problems. Under Plaintiff's interpretation, agents would be compensated based solely on the loan amount, regardless of the time allegedly expended, the services purportedly performed, or the value of those services. And if agents need not justify what work they performed, agents would receive a fee simply by claiming they provided services, even if they did not. This is a recipe for fraud. Similarly, under Plaintiff's approach, nothing would stop multiple agents from claiming fees for work purportedly performed on behalf of a single PPP applicant.

    **c.**  **Plaintiff's Reliance on the IFR and the Information Sheet Is Misplaced.**

Because the CARES Act does not entitle agents to fees, Plaintiff relies on a contorted reading of the IFR and a related Information Sheet. (Compl. ¶¶ 22, 45.) But neither the IFR nor the Information Sheet supports an absolute right to recover an agent fee. Any contrary reading would conflict with the CARES Act and the SBA's longstanding agent fee regulations, and, thus, must be rejected. *See Lyng v. Payne*, 476 U.S. 926, 937 (1986) ("[A]n agency's power is no greater than that delegated to it by Congress.").

    i.  The IFR Does Not Entitle Agents to Receive Fees.

The IFR does not *require* lenders to pay fees to agents. Rather, it caps the "total amount that an agent *may* collect." 85 Fed. Reg. at 20,816 (emphasis added). To the extent an agent "may" collect a fee, the IFR also directs that the fee "will be paid by the lender out of the fees the lender receives from SBA," not "from the borrower … or the"

PPP loan proceeds." *Id.* Taken together, this language directs only that *if* an agent, assuming it has met all other applicable requirements, is to be compensated for assisting a borrower, such compensation must be paid by the lender, and then only *up to* the maximum amounts set forth in the IFR. *See Johnson*, 2020 WL 5608683, at *7-8. Setting a maximum fee, as Plaintiff concedes the IFR does, makes no sense if, as Plaintiff contends, the SBA intended for agents to *always* receive that amount. *See id.* at *6, n.14. Rather, the existence of a maximum suggests that the agent and lender would necessarily have to enter into an agreement on any amount to be paid. And nowhere does the IFR mandate that a lender *must* pay an agent any fees in the first place. *See Sport & Wheat*, 2020 WL 4882416, at *3 ("This language does not <u>require</u> that lenders share their fees."). Like Congress, agencies do not "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions — [they] do not, one might say, hide elephants in mouseholes." *Whitman* v. *Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Plaintiff's contention that a limitation on agent fees is a purported new entitlement to those fees fails as a matter of law.

The Information Sheet issued by the Treasury Department says nothing different.[9] *See* Dep't of Treasury, Paycheck Protection Program (PPP) Information Sheet— Lenders.[10] It simply paraphrases the CARES Act and the IFR by providing that *if* agents are to receive fees, those fees "will be paid out of lender" fees and "[t]he lender will pay the agent." *Id.* at 2. Like the CARES Act and the IFR, the Information Sheet does not guarantee that agents will receive fees.

Further, the Treasury Secretary recently rejected Plaintiff's erroneous theory. He testified before Congress that agent fees were "intended to be based upon a contractual

---

[9] Even if it did, "interpretations contained in policy statements … lack the force of law." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

[10] *Available at* https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf

relationship between the agent and the bank."[11]

ii.   The SBA Did Not Change Its Longstanding Agent Fee Regulations.

SBA regulations require that compensation agreements must be in place for "any matter involving SBA assistance," 13 C.F.R. § 103.5, which necessarily includes PPP loans. The SBA has never indicated that purported agents for PPP loans are exempt from its "compensation agreement" requirement, confirming that the agency did not, in fact, alter course. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (Regulatory agency may not "depart from a prior policy *sub silentio* or disregard rules that are still on the books" but must instead provide a reasoned explanation and "display awareness that it *is* changing position.").

To complete the PPP application process, applicants submit Form 2483 and limited supporting documentation. "The estimated time for completing this application, including gathering data needed, is 8 minutes." *See* Ex. C at 3. SBA's regulations contemplate that small businesses may apply for Section 7(a) loans, including PPP loans, "without a representative." 13 C.F.R. § 103.2(a). More than 97 percent of businesses do so. *See* 85 Fed. Reg. at 7,627. Had the SBA intended for every putative agent to receive an agent fee even in the absence of a compensation agreement, it would have required loan applicants to identify those agents. Such a requirement would have made clear which agents actually helped borrowers, and would stop multiple agents from claiming fees for work purportedly performed on a single PPP loan application. But Form 2483 does not ask borrowers to identify agents that assisted them; that information must instead be provided on the traditional Form 159 Compensation Agreement. That absence further supports the SBA's intention that agents seeking compensation must enter into a traditional Section 7(a) Compensation Agreement with the lender.

The SBA form that lenders use to apply to the SBA for PPP loan guarantees, Form

---

[11] *See* June 30, 2020 Transcript of House Financial Services Committee hearing attached as Exhibit E. A video recording of the hearing is available at https://www.congress.gov/event/116th-congress/house-event/110839, and the cited testimony of Treasury Secretary Mnuchin is at 1:32:02 to 1:33:48.

2484, attached hereto as Exhibit F, reaffirms this point. Unlike the ***borrower*** application form, the ***lender*** application form asks the ***lender*** to identify whether the ***lender*** used an agent. *See* Ex. F at Question K ("Is the Lender using a third party to assist in the preparation of the loan application or application materials, or to perform other services in connection with this loan?"). The inclusion of this question on the lender application form, and its omission from the borrower application form, confirm that the SBA did not intend every self-identified borrower agent to receive a fee. Rather the means for identifying an agent comes in the form of the 159 Compensation Agreement, through which a lender agrees to pay a particular agent for services before that "agent" becomes entitled to a fee.

Plaintiff's proposed interpretation invites fraud and abuse. It would permit ostensible agents to claim after-the-fact to have assisted borrowers with PPP applications, and to demand the maximum available agent fee, regardless of the services provided and without the lender's consent to do business with that agent. In contrast, the Form 159 Compensation Agreement provides a triple-check against fraud: agents must certify that they have accurately described the services provided, applicants must certify that the agent's representations about the services are satisfactory, and lenders must certify that the agent fees charged are reasonable and satisfactory given the certifications provided. (*See* Ex. A at 2–3.) Without the required compensation form, there is no framework in place to protect against the improper result that the purported agent would receive the maximum amount every time no matter what services, if any, were performed. Lenders must also confirm that the agent is not "debarred, suspended, proposed for debarment, declared ineligible or voluntarily excluded from participation in th[e] transaction by any Federal department or Agency." *Id.* Given the SBA's concerns with agent-fee fraud,[12]

---

[12] *See* SBA OIG Report Entitled "Report on the Most Serious Management and Performance Challenges Facing the Small Business Administration" attached here as Exhibit G, at 8–9 ("OIG investigations have revealed a pattern of fraud by loan packagers and other for-fee agents in the 7(a) Loan Program, involving hundreds of millions of dollars.")

1   there is no reason to imagine the agency intended to dispense with this important anti-
2   fraud safeguard (as well as the lender's freedom to choose with whom it does business),
3   much less that it would do so without explanation. Because Plaintiff does not—and
4   cannot—allege that it agreed with any Defendant regarding its claimed agent fees,
5   Plaintiff is not entitled to any.

6   **II.    PLAINTIFF'S CLAIMS ARE IMPERMISSIBLE ATTEMPTS TO ASSERT
7          A NON-EXISTENT FEDERAL PRIVATE RIGHT OF ACTION.**

8          That the CARES Act and its implementing regulation do not create any
9   entitlement to agent fees is fatal to all of Plaintiff's claims. *See Sport & Wheat,* 2020 WL
10  4882416 at *13; *Johnson*, 2020 WL 5608683, at *9 ("[B]ecause the PPP does not entitle
11  plaintiffs to any portion of the lender's fees (absent an agreement), each of these state
12  law claims fails and must be dismissed."). But even assuming for argument's sake that
13  the CARES Act could be read otherwise, Plaintiff's claims still fail because it has no
14  private cause of action to assert its claimed right to agent fees.

15          **a.  There Is No Private Right of Action to Enforce the CARES Act.**

16          Plaintiff seeks to enforce federal law by private action, but Congress has granted
17  no such right to bring a private claim under the CARES Act or its implementing
18  regulations. "[P]rivate rights of action to enforce federal law must be created by
19  Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). And "the CARES Act does
20  not expressly provide a private right of action." *Profiles, Inc. v. Bank of Am. Corp.*, 2020
21  WL 1849710, at *4 (D. Md. Apr. 13, 2020); *see also Sport & Wheat*, 2020 WL 4882416
22  at *6 & n. 6 (similar); *Johnson*, 2020 WL 5608683, at *8 ("Even if plaintiffs had a viable
23  argument on the merits (which they do not) … there is no private cause of action to
24  enforce this provision of the CARES Act.").

25          To maintain a private right of action, Plaintiff must show that Congress created a
26  private right of action in the CARES Act "in clear and unambiguous terms." *Gonzaga*
27  *Univ.* v. *Doe*, 536 U.S. 273, 290 (2002). Yet the CARES Act, in combination with the
28  Small  Business  Act,  only  provides  a  framework  for  SBA  administration  of  PPP

applications, loans, and agent fees; it does not provide the requisite "clear and unambiguous" language demonstrating that Congress intended that a business should also be able to sue a lender under the statute. Thus, Plaintiff cannot meet its burden.

Courts, including the Ninth Circuit, uniformly hold the Small Business Act, even as amended by the CARES Act, does not provide for an express or implied right of action. *Profiles*, 2020 WL 1849710, at *6 (finding no private right of action under the CARES Act); *Crandal v. Ball, Ball & Brosamer, Inc.*, 99 F.3d 907, 909 (9th Cir. 1996) ("Other circuits that have considered the question have unanimously agreed that the Small Business Act does not create a private right of action in individuals."); *accord Bulluck v. Newtek Small Bus. Fin., Inc.*, 808 F. App'x 698, 701 (11th Cir. 2020).

The Small Business Act, which the CARES Act amended, contains clear terms that provide for "supervisory and enforcement authority" by *regulators*, not agents. 15 U.S.C. § 650. This enforcement authority confirms the "view that Congress did not intend to create a separate private right of action in the CARES Act." *Profiles*, 2020 U.S. Dist. LEXIS 64330, at *17; *see also Alexander*, 532 U.S. at 289–90 (explaining that a separate enforcement regime "tend[s] to contradict a congressional intent to create privately enforceable rights"); *Johnson*, 2020 WL 5608683, at *9 ("There is no language in the CARES Act that suggests Congress intended for agents – who are not even the intended beneficiary of a statute that is designed to get money in the hands of small businesses – to have a private remedy."). Moreover, Plaintiff's claims are based on a regulation, which cannot create a private right of action. *Alexander*, 532 U.S. at 291 ("[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress."). Therefore, Plaintiff's attempt to "enforce" the CARES Act and the Section 7(a) Loan Program must be dismissed.

**b. Because the CARES Act Does Not Provide for a Private Right of Action, <u>Count I Requesting Declaratory Relief Fails.</u>**

Because there is no express or implied private right of action to enforce the contested provisions in the CARES Act or in the Small Business Act, Plaintiff's claims

under the CARES Act (Count V) and the SBA's 7(a) Loan Program (Count VI) fail even if Plaintiff's interpretation of the statute and regulations are correct.

The absence of a private right of action is also fatal to Plaintiff's request for a declaratory judgment that Defendants are obligated under SBA regulations "to set aside money to pay, and to pay Agent Fees the PPP Agents have earned for the work performed on behalf of their clients that receive a PPP loan from the Defendants." (Compl. ¶ 62.) The operation of the Declaratory Judgment Act "is procedural only." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). The "availability of [declaratory] relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Because Plaintiff's underlying federal-law claims (Count V and VI) fail as a matter of law, so too does its claim for declaratory relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (dismissing a claim for declaratory relief because the court dismissed all underlying substantive claims).

> **c.   The Lack of a Private Right of Action Also Defeats Plaintiff's Claims for Unjust Enrichment, Conversion, and Violation of the Arizona Consumer Fraud Act ("ACFA").**

Unable to invoke a federal claim, Plaintiff attempts to enforce the alleged "requirements" of the CARES Act and the IFR through state law claims. But when a plaintiff's suit is "in essence a suit to enforce" a federal statute lacking a private right of action, it is "incompatible with the statutory regime" to allow common-law claims predicated on alleged violations of that federal standard. *See Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 118 (2011); *Fossen v. Caring For Montanans, Inc.*, 993 F. Supp. 2d 1254, 1265 (D. Mont. 2014), *aff'd*, 617 F. App'x 737 (9th Cir. 2015) (dismissing common law claims that were merely a "backdoor method of presenting an alleged violation of a statute that [plaintiffs] have no right to enforce"); *see also Short v. Chase Home Fin. LLC*, No. CV-11-133-PHX-DGC, 2011 WL 9160941, at *5 (D. Ariz. Aug. 22, 2011) (dismissing claim for violation of the ACFA premised on an alleged a violation of the federal statute that did not provide a private right of action).

The allegations in Plaintiff's Complaint for unjust enrichment, conversion, and

violation of the ACFA merely parrot the allegations for Plaintiff's alleged violations of the CARES Act and the Section 7(a) loan program. For example, Plaintiff's unjust enrichment claim alleges that "Defendants have failed to pay Plaintiff and the Class Members the Agent Fees in violation of the SBA PPP Final Rule," (Compl. ¶ 66), while the conversion claim alleges that "[b]y withholding the Agent fees, Defendants have maintained wrongful control over Plaintiff's property inconsistent with Plaintiff's entitlements under the SBA Regulations" (*Id.* ¶ 84.) Similarly, the ACFA claim asserts that Defendants "failed to provide Plaintiff and the Class payment in the amount of the mandatory Agent Fees." (*Id.* ¶ 94.)

Plaintiff cannot avoid the unmistakable omission of a private right of action from the CARES Act by styling its counts as state law claims. If it were that simple to transform federal statutes and regulations into private claims, the exception would swallow the rule. But Plaintiff "cannot create a private right of action under the guise of a state law claim." *Leonard v. Medtronic, Inc.*, No. 1:10-CV-03787-JEC, 2011 U.S. Dist. LEXIS 93176, at *23 (N.D. Ga. Aug. 19, 2011). This Court should reject Plaintiff's attempt to use common-law claims to bootstrap their way into a cause of action that the CARES Act does not give it. *See Lil' Man in the Boat, Inc. v. City & Cty. of San Francisco*, No. 17-CV-00904-JST, 2018 WL 4207260, at *4 (N.D. Cal. Sept. 4, 2018) ("When a plaintiff lacks a private right of action under a particular statute, she cannot argue around that limitation by bootstrapping her cause of action onto an unjust enrichment or declaratory relief claim.").

## III. PLAINTIFF'S CLAIMS ARE SUBJECT TO DISMISSAL FOR ADDITIONAL REASONS.

Beyond Plaintiff's lack of any statutory entitlement to an agent fee and the absence of a private right of action, Plaintiff's claims are also facially deficient on their own elements and should therefore be dismissed for failure to state plausible claims.

### a. Plaintiff's Unjust Enrichment Claim Fails Because Defendants Did Not Benefit from Plaintiff's "Assistance" with PPP Applications.

To establish a claim for unjust enrichment or restitution, Plaintiff must allege: "1. an enrichment; 2. an impoverishment; 3. a connection between the enrichment and the impoverishment; 4. the absence of justification for the enrichment and the impoverishment; and 5. the absence of a legal remedy provided by law." *Bd. of Trustees of Az. Bricklayers' Pension Tr. Fund v. Obeso*, CV-18-01765-PHX-JGZ, 2019 WL 4169005, at *2 (D. Ariz. Sept. 3, 2019). Plaintiff attempts to assert an unjust enrichment claim based on the allegation that "Defendants have unjustly benefitted through the illegal retention of the Agent Fee portion of the Lender Fees paid by the Federal Government to the Defendants…." (Compl. ¶ 70.) But because the CARES Act and its regulations do not entitle Plaintiff to an agent fee, the requisite enrichment and impoverishment do not exist. *See Johnson*, 2020 WL 5608683, at *10 ("[B]ecause the Court holds that the PPP rules and regulations do not entitle plaintiffs to agent fees, the Court rejects these unjust enrichment claims.").

In addition, Plaintiff fails to allege any specific benefit that *Plaintiff* conferred upon Defendants. At most, Plaintiff alleges that it conferred a benefit on the unidentified PPP borrowers it allegedly assisted—not on Defendants. Thus, Plaintiff's own allegations confirm that there can be no claim for unjust enrichment. *See Haller v. Advanced Indus. Computer Inc.*, 13 F. Supp. 3d 1027, 1032 (D. Ariz. 2014) (no unjust enrichment where plaintiff indirectly benefits defendant through services defendant provided to another). To the extent Plaintiff contends that Defendants received a benefit in the form of PPP lender fees, those fees were paid by the SBA—not by Plaintiff, as even Plaintiff admits. (Compl. ¶ 70.)

Finally, the unjust enrichment claim also fails because any alleged benefit was unsolicited. "Generally, a person who bestows an unsolicited benefit upon another is not entitled to restitution." *Loiselle v. Cosas Mgmt. Group, LLC*, 224 Ariz. 207, 210, ¶ 11, 228 P.3d 943, 946 (Ariz. Ct. App. 2010). Plaintiff's complaint fails to allege any facts demonstrating that Defendants solicited the benefit they received, or even that

1  Defendants knew that Plaintiff was supposedly working on the PPP applications. (Compl.

2  ¶¶ 2-6.)

3          **b. Plaintiff's Conversion Claim Fails Because It Has No Right to Payment of Agent Fees and Any Alleged Indebtedness Can Be Discharged Through Payment.**

4

5          The plaintiff in a conversion action must have "had the right to immediate

6  possession of the chattel at the time of the alleged conversion." *Universal Mktg. & Entm't*

7  *v. Bank One of Ariz., N.A.*, 203 Ariz. 266, 53 P.3d 191, 193 (Ariz. Ct. App. 2002) (*quoting*

8  *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 166 Ariz. 333, 335, 802 P.2d 1032,

9  1034 (Ariz. Ct. App. 1990) (citations omitted)). Plaintiff's claim fails because it did not

10  have a right to immediate possession of anything. As detailed above, Plaintiff has no right

11  to receipt of a fee absent a prior agreement with Defendants. *See Johnson*, 2020 WL

12  5608683, at *10 ("[B]ecause the Court holds that the PPP rules and regulations do not

13  entitle plaintiffs to agent fees, the Court rejects these conversion claims.").

14          Plaintiff's conversion claim also fails because it does not seek the return of specific

15  money, but rather the repayment of money generally that it alleges was wrongfully

16  withheld from the Defendants' lender fees. In Arizona, "[m]oney is not the proper subject

17  of a conversion claim when the claim is used merely to collect on a debt that could be

18  satisfied by money generally." *Liberty Life Ins. Co. v. Myers*, No. CV 10-2024-PHX-

19  JAT, 2013 WL 530317, at *13 (D. Ariz. Feb. 12, 2013). Plaintiff fails to allege that

20  Defendant "converted" Plaintiff's property but, instead, merely alleges that "Defendants

21  have failed to pay the required Agent Fees[.]" (Compl. ¶ 81.) Plaintiff's allegation, albeit

22  meritless, amounts to an unfulfilled monetary obligation, which does not give rise to a

23  conversion claim. *See Liberty Life Ins. Co.*, 2013 WL 530317 at *13.

24          **c. Plaintiff Fails to State a Claim under the ACFA.**

25          The ACFA prohibits and defines what constitutes an unlawful practice in the sale

26  or advertisement of merchandise. *See* A.R.S. § 44-1522. To state a claim, a plaintiff has

27  the burden to show: (1) a false promise or misrepresentation made in connection with the

28  sale or advertisement of merchandise with the intent that others rely on it, (2) the plaintiff

1    relied on the false promise or misrepresentation, and (3) injury resulting from the false

2    promise or misrepresentation. *See Kuehn v. Stanley*, 208 Ariz. 124, 129 (Ct. App. 2004).

3    Plaintiff's claim under the ACFA fails because its allegations lack particularity and do

4    not satisfy any of the requisite elements of a consumer fraud claim.

5               i.  <u>Plaintiff's Minimal Allegations Do Not Meet the Particularity Requirements
                    of Rule 9(b).</u>
6

7    Because the ACFA claim is based in fraud, Plaintiff is required to plead these

8    elements with particularity. *See* Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317

9    F.3d 1097, 1103 (9th Cir. 2003) ("Rule 9(b)'s particularity requirement applies to state-

10   law causes of action."). Plaintiff must therefore allege "the who, what, when, where, and

11   how" of the misconduct charged. *Vess*, 317 F.3d at 1106.

12   Plaintiff fails to meet the high standards of Rule 9(b) because it does not allege

13   the particulars of its claim. Plaintiff simply asserts that "Defendants have committed

14   unfair acts and concealed and omitted material facts that have harmed Plaintiff and the

15   Class." (Compl. ¶ 91.) These allegations do not afford Defendants sufficient notice of the

16   allegedly fraudulent "concealed and omitted material facts." In addition, Plaintiff does

17   not set forth any facts regarding "the times, dates, places, and other details surrounding

18   the allegedly fraudulent conduct." *Grismore v. Capital One F.S.B.*, No. CV 05–2460–

19   PHX–SMM, 2007 WL 841513, at *6 (D. Ariz. Mar. 16, 2007) (dismissing an ACFA

20   claim because plaintiff failed to comply with Fed. R. Civ. P. 9(b)).

21   Plaintiff also fails to make individualized allegations as to each defendant. "The

22   Ninth Circuit has repeatedly emphasized that 'Rule 9(b) does not allow a complaint to

23   merely lump multiple defendants together' but 'requires plaintiffs to differentiate their

24   allegations and inform each defendant separately of the allegations surrounding his

25   alleged participation in the fraud.'" *In re MERS Litig.*, No. 09–md–2119–JAT, 2010 WL

26   4038788, at *6 (D. Ariz. Sept. 30, 2010) (*quoting Swartz v. KPMG LLP*, 476 F.3d 756,

27   764–65 (9th Cir. 2007)). Here, no Defendant has sufficient notice of its alleged

28   wrongdoing.

1      ii.    Plaintiff Fails to Plead the Elements of an ACFA Claim.

2          Plaintiff has not pled—and cannot plead—the elements of an ACFA claim.

3          *First*, Plaintiff was not the buyer or target of "the sale or advertisement of any

4   merchandise." *Cellco P'ship v. Hope*, 2011 WL 3159172, at *5 (D. Ariz. July 26, 2011)

5   ("[T]he plaintiff under the ACFA must be the buyer in the merchandise transaction.");

6   *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992)

7   (consumer fraud claim act failed where plaintiff was "not a buyer, nor [] the target of

8   deceptive advertising"). Nor has Plaintiff alleged any facts demonstrating that

9   Defendants' identification of "themselves as PPP lenders" were intended to induce

10  Plaintiff to obtain a loan and thus, cannot form the basis for its claim. *See Walker v.*

11  *Gallegos*, 167 F. Supp. 2d 1105, 1107 (D. Ariz. 2001) (dismissing ACFA claim with

12  prejudice because the "allegations made in a complaint to repossess collateral are too

13  attenuated from the underlying loan sale or advertisement to come within the statute's

14  purview"); *Jackson v. Wells Fargo Bank, NA*, CV-13-00617-PHX-NVW, 2013 WL

15  12190474, at *2 (D. Ariz. Oct. 18, 2013), *aff'd sub nom. Jackson v. Wells Fargo Bank,*

16  *N.A.*, 693 Fed. Appx. 634 (9th Cir. 2017) (dismissing ACFA claim as "the allegedly false

17  statements were not intended to induce [plaintiff] to obtain a loan."); *Davis v. Bank of*

18  *Am. Corp.*, CV 12-01059-PHX-NVW, 2012 WL 3637903, at *5 (D. Ariz. Aug. 23, 2012)

19  (dismissing ACFA claim because defendant's failure to comply with regulatory

20  requirements did not convert its actions into false statements "in connection with the sale

21  or advertisement of any merchandise."); *see also Johnson*, 2020 WL 5608683, at *12

22  (dismissing claim under New York counterpart to ACFA because alleged promise to pay

23  agent fees is not "consumer-oriented").[13]

24          *Second*, Plaintiff completely fails to (and cannot) allege that it relied on any of

25  

26  [13]  In addition, the ACFA is intended to protect consumers from exposure to
    disproportionate bargaining power. *See Sullivan v. Pulte Home Corp.*, 231 Ariz. 53, 61,
27  290 P.3d 446 (App. 2012). A plaintiff is not exposed to disproportionate bargaining
    power where, as here, it is not a party to the subject transaction. *See id.* (dismissing a
28  claim under the ACFA because plaintiff was not a party to the original transaction and
    thus, not subject to disproportionate bargaining power).

24

Defendants' alleged actions. Instead, Plaintiff makes the conclusory and unsupported assertion that "Defendants intended that Plaintiff and the Class rely on their omissions." (Compl. ¶ 97.) But at no point does Plaintiff claim it was somehow exposed to Defendants' "unfair acts" or omissions before assisting their clients in applying for PPP Loans. Thus, even taken as true, Plaintiff's allegations fall far below the pleading requirement. *See McBride v. Wells Fargo Bank NA*, CV 11-02592-PHX-FJM, at *3 (D. Ariz. Mar. 29, 2012) (holding a complaint failed to state a claim under the ACFA because "plaintiffs have not pled any particulars about … how they relied on this statement to their detriment"); *see also Johnson*, 2020 WL 5608683, at *11 (dismissing claim under New York counterpart to ACFA because plaintiffs did not adequately allege they "even saw, much less relied on," alleged statement that a defendant would pay agent fees).

*Third*, while Plaintiff's ACFA claim is premised on the failure to pay agent fees (Compl. ¶ 94), Plaintiff also makes the vague allegation that Defendants omitted material information. This allegation, however conclusory, also fails to support an ACFA claim. A failure to disclose can only constitute consumer fraud if the defendant had a duty to disclose. *See Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 989 (D. Ariz. 2012). Here, Plaintiff fails to plead any facts, let alone with particularity, giving rise to such a duty. *See id.* ("Plaintiffs' claims are defective under Arizona law because Plaintiffs have not pled facts to establish such a duty" to disclose).

*Fourth, and finally*, Plaintiff has not alleged an injury resulting from Defendants' alleged unfair acts or omissions. Plaintiff summarily claims that Defendants "failed to provide Plaintiff and the Class payment in the amount of the mandatory Agent Fees[.]" (Compl. ¶ 94.) But Plaintiff does not allege, because it cannot, that it met the requirements for agent compensation under SBA regulations—Plaintiff did not enter into a compensation agreement with Defendants or obtain approval from Defendant to assist with PPP Loan applications. *See* 13 C.F.R. § 103.5(a); *see also Sport & Wheat*, 2020 WL 4882416 at *4; *Johnson*, 2020 WL 5608683, at *7. Thus, Plaintiff's alleged "injury" was not a result of any action or inaction by Defendant but was due to Plaintiff's own failures.

1

## IV.     **CONCLUSION**

2      For the foregoing reasons, this Court should dismiss the Complaint in its entirety

3   and with prejudice.

4      Dated this 30th day of September 2020.

5

GREENBERG TRAURIG, LLP                  SNELL & WILMER LLP

6

7   By: */s/ Nicole M. Goodwin*                By:   */s/ Jesse T. Smallwood*
                                                   Barbara J. Dawson
8      Nicole M. Goodwin                         Gregory Marshall
       Adrianna Griego Gorton                    SNELL & WILMER L.L.P.
9      *Attorneys for Defendant JPMorgan*        One Arizona Center
       *Chase Bank, N.A.*                        400 E. Van Buren, Suite 1900
10                                               Phoenix, Arizona 85004-2202
                                                 Telephone: 602.382.6000
11                                               Facsimile: 602.382.6070

12                                               WILLIAMS & CONNOLLY LLP
                                                 Enu A. Mainigi (admitted pro hac
13                                               vice)
                                                 Kenneth C. Smurzynski (admitted
14                                               pro hac vice)
                                                 Craig D. Singer (admitted pro hac
15                                               vice)
                                                 Jesse T. Smallwood (admitted pro
16                                               hac vice)
                                                 725 Twelfth Street, N.W.
17                                               Washington, D.C. 20005
                                                 Telephone: (202) 434-5000
18                                               emainigi@wc.com
                                                 ksmurzynski@wc.com
19                                               csinger@wc.com
                                                 jsmallwood@wc.com
20

21                                               *Attorneys for Bank of America,*
                                                 *N.A.*
22

23

24

25

26

27

28

1

SQUIRE PATTON BOGGS (US) LLP          QUARLES & BRADY LLP

2

By: */s/ Brian A. Cabianca*                      By: */s/ C. Bradley Vynalek*

3
    Brian A. Cabianca                            C. Bradley Vynalek
    Gregory T. Saetrum                           *Attorneys for U.S. Bank National*
4
    *Attorneys for Desert Financial Credit*      *Association*
    *Union*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

☒     I hereby certify that on September 30, 2020, I electronically transmitted the attached
document to the Clerk's Office using the CM/ECF System for filing and transmittal
of a Notice of Electronic Filing to all CM/ECF registrants.

3

4

5                                                    By: */s/ Carolyn Smith*
                                                         Employee, Greenberg Traurig, LLP

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28